UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANKIT ANKIT,<br>Petitioner,<br>v.<br>WARDEN DESERT VIEW ANNEX, et al.,<br>Respondents. | Case No. 5:26-cv-04953-KES<br><br>ORDER DENYING THE PETITION |

**I. INTRODUCTION**

Ankit Ankit ("Petitioner") filed a counseled petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). The parties have consented to the jurisdiction of the Magistrate Judge. (Dkt. 4.) For the reasons explained below, the Petition is denied.

## II. PROCEDURAL HISTORY

Petitioner filed the present Petition on August 28, 2026. (Dkt. 1.)[1] The Petition challenges the outcome of a bond hearing held before an immigration judge ("IJ") on May 8, 2026. The Petition raises the following claims:

Ground 1: Due process required the IJ to place the burden of proof on the government, and the IJ's "May 8 decision did not unequivocally apply that framework," because the IJ stated Petitioner was a flight risk "regardless of whose burden it is." (Pet. at 15-16.)

Ground 2: "Continued detention requires a meaningful determination that incarceration remains necessary." (Pet. at 16.) "[T]he passage of time is relevant because Petitioner's deprivation of liberty continues while the determination supporting that deprivation becomes increasingly removed from his present circumstances." (Pet. at 17.) "[T]he continuing deprivation of Petitioner's physical liberty rest[s] upon constitutionally adequate process establishing that incarceration remains necessary today." (Pet. at 18.)

The Petition seeks: (1) Petitioner's release "subject to reasonable conditions of supervision," or, alternatively (2) an order requiring Respondents to "provide Petitioner within seven days with a constitutionally adequate individualized custody hearing before an [IJ]," which means a hearing where (a) "DHS bear[s] the applicable burden of establishing by clear and convincing evidence that Petitioner's continued detention is necessary because he presently poses a risk of flight that cannot reasonably be mitigated through appropriate conditions of release," and (b) "the decisionmaker … meaningfully consider[s] whether reasonable conditions short of incarceration can adequately address any

[1] Petitioner also moved for a preliminary injunction. (Dkt. 2.) The Court denied that motion, finding that Petitioner had not alleged imminent, irreparable harm that could not be addressed by the already-expedited briefing schedule on the underlying Petition. (Dkt. 7.)

demonstrated flight risk." (Pet. at 19-20.)

Respondents answered the Petition on September 4, 2026. ("Answer" at Dkt. 11.) First, they argue that Petitioner's claims are "barred by the abuse-of-the-writ doctrine," because they could have been raised in his prior habeas petition. (Id. at 3-4.) Second, they argue his claims should be denied for failure to exhaust his administrative remedies. (Id. at 4-5.) They argue, "custody redetermination is most appropriately assessed through the administrative process available to him before EOIR [the Executive Office for Immigration Review]. … In addition to the appellate process before the Board of Immigration Appeals ["BIA"], the other remedy available to Petitioner is a Rodriguez hearing[[2]] on his prolonged detention should the length of his detention reach 180 days." (Id. at 2.) Third, they argue Petitioner is improperly asking this Court to "reweigh the evidence considered by the IJ at the bond hearing." (Id. at 6-8.)

Petitioner's Reply was due by September 8, 2026 (Dkt. 6), and none was filed.

## III. FACTUAL RECORD

### A. Entry into the U.S. (2024).

Petitioner is a native and citizen of India. (Pet. at 5.) He entered the United States near Tecate, California, on or about March 8, 2024, without inspection or admission. (Pet. at 5.) Immigration authorities encountered him shortly after entry

[2] "Named after the Ninth Circuit's decision in Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015), which has an extensive history that need not be recounted here, a Rodriguez bond hearing is a periodic custody redetermination proceeding—required in the Central District of California (for reasons not pertinent here)—where the government must show at six-month intervals that a detainee's continued detention pending removal proceedings is justified by clear and convincing evidence of flight risk or danger to the community." Penaloza Monsalve v. Semaia, No. 26-cv-00463-SVW-ACCV, 2026 WL 1625352, at *1 n.1 2026 U.S. Dist. LEXIS 121961, at *2 n.1 (C.D. Cal. June 1, 2026). As of the date of this order, Petitioner has been detained for about five months.

and placed him in removal proceedings by issuing a Notice to Appear charging removability under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i). (Pet. at 5.)

Petitioner was thereafter released from immigration custody while his removal proceedings remained pending. (Pet. at 5.) He lived in the U.S. for the next two years. (Pet. at 5.) He obtained a California commercial driver's license. (Pet. at 5.) He obtained work authorization. (Answer Ex. D / Dkt. 11-4 at 2 (Form I-213).)

**B. Arrest by ICE (April 17, 2026).**

On April 17, 2026, Petitioner was re-detained by ICE in Fontana, California. (Pet. at 2; Answer Ex. D / Dkt. 11-4 at 2 (Form I-213).) Petitioner was arrested based on his resemblance to another immigrant, who was the target of an ICE enforcement operation. (Id.) ICE records indicated that Petitioner was "living in an incorrect EOIR district," because his removal proceedings were in San Francisco. (Id. at 3.) Thereafter, "an I-200 warrant of arrest was issued, and [Petitioner] was placed under arrest and taken into ICE custody without incident." (Id.)

**C. Prior Habeas Action (April-May 2026).**

About a week later, on April 24, 2026, Petitioner filed a counseled petition for writ of habeas corpus in this Court challenging his detention. Ankit Ankit v. Warden, No. 5:26-cv-02082-KES (C.D. Cal.), Dkt. 1 (petition). The government did not oppose Petitioner's claim that he was entitled to a bond hearing under 8 U.S.C. § 1226(a). Id., Dkt. 12 (answer stating, "Respondents are not presenting an opposition argument to Petitioner's request for a bond hearing at this time.").

Accordingly, on May 5, 2026, the Court granted the Petition in part and enjoined Respondents from detaining Petitioner "without providing an individualized bond hearing within seven (7) days of the date of this Order." Id., Dkt. 13. After Petitioner failed to respond to the Court's order to file further briefing on the other claims raised in the Petition, the Court dismissed those claims

without prejudice for lack of prosecution. Id., Dkt. 17.

**D. Bond Hearing (May 8, 2026).**

In compliance with this Court's order, a bond hearing was held before an IJ on May 8, 2026. (Pet. at 2, 7.) The IJ denied release, finding that Petitioner is a flight risk. (Pet. at 2, 7-9.) The IJ's written order stated, "The TRO[[3]] is silent as to the imposition of the burden of proof. Regardless of whose burden it is, the Court finds [DHS] has demonstrated, by clear and convincing evidence, that [Petitioner] is a flight risk such that no amount of bond could mitigate or ameliorate the risk." (Answer Ex. B / Dkt. 11-2 at 1.) The order cited Matter of Guerra, 24 I&N 37 (BIA 2006) and found the following: (a) Petitioner has no family with status in the U.S.; (b) Petitioner illegally entered into the U.S., which the IJ found demonstrated an inability or unwillingness to follow the law; (c) the address given in Petitioner's immigration paperwork was in a different city from the address on his commercial driver's license; (d) Petitioner had met his proposed sponsor, a friend of his father, only once, and the sponsor's declaration was "pre-filled out" with "multiple spelling errors including referencing [Petitioner] as a 'her'"; and (e) Petitioner's employment as a long-haul driver gave him "access to and the ability to drive across the country…." (Id. at 1-2.)

The Petition states that Petitioner did not appeal the IJ's order to the BIA. (Pet. at 3, 12-13.) However, the Answer attaches a filing receipt, which appears to show that Petitioner appealed on June 19, 2026. (Answer Ex. C / Dkt. 11-3.)

**E. Removal Order (June 3, 2026).**

On June 3, 2026, an IJ ordered Petitioner removed from the U.S. (Answer Ex. A / Dkt. 11-1 (removal order).) India was designated as his country of

---

[3] The Court interprets the IJ's reference to a "TRO" or "temporary restraining order" as a reference to this Court's May 5, 2026 order granting Petitioner's prior habeas petition.

removal. (Id. at 2.)

Petitioner remains in ICE custody in Adelanto, California. See ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 245-883-470 (India), last accessed Sept. 9, 2026)).

## IV. DISCUSSION

### A. Petitioner is Not Entitled to Relief on Ground 1.

Petitioner argues that due process required the IJ to place the burden of proof on the government, and the IJ's "May 8 decision did not unequivocally apply that framework," because the IJ stated Petitioner was a flight risk "regardless of whose burden it is." (Pet. at 15-16 (citing Singh v. Holder, 638 F.3d 1196, 1203-05 (9th Cir. 2011)).)

#### 1. Legal Standard.

##### a. District Court Review of IJ Bond Decisions.

"To determine whether [a noncitizen[4]] is a danger to the community or a risk of flight, an IJ weighs nine factors," which the BIA established in In re Guerra, 24 I. & N. Dec. 37 (B.I.A. 2006). See Martinez v. Clark, 124 F.4th 775, 783 (9th Cir. 2024). In Martinez, the Ninth Circuit held that IJs' "application of the 'dangerousness' standard is a reviewable mixed question" of law and fact, despite the statutory limitations on the review of "discretionary" decisions, because "[e]ven though what constitutions 'dangerousness' is malleable and involves agency discretion, … this is still a legal standard so long as federal courts can 'assess whether an IJ correctly applied the statutory standard to a given set of

[4] This order generally uses the term noncitizen rather than alien. See Avilez v. Garland, 69 F.4th 525, 527 n.1 (9th Cir. 2023) ("[U]se of the term noncitizen has become a common practice of the Supreme Court . . . . [In addition,] [t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed,' … while the word noncitizen, which is synonymous … avoids such connotations. Thus, noncitizen seems the better choice.").

facts." Id. at 783 (quoting Wilkinson v. Garland, 601 U.S. 209 (2024)). Under this standard, courts "cannot reweigh evidence ... [but] can [only] determine whether the BIA applied the correct legal standard.'" Martinez, 124 F.4th at 785 (citation omitted) (noting that courts should "tread especially carefully in this area where Congress sought to eliminate judicial review" under § 1226(e)). The Ninth Circuit instructed, "Generally, in the absence of any red flags," courts should "take the BIA at its word." Martinez, 124 F.4th at 785. For example, courts should "accept that the BIA 'applied the correct legal standard' if the BIA 'expressly cited and applied [the relevant caselaw] in rendering its decision." Id. (citation omitted).

Since IJs use the Guerra factors to determine both dangerousness and flight risk, district courts generally applied the Martinez "abuse of discretion" standard when reviewing both types of findings. See, e.g., Restrepo v. Noem, No. 26-cv-01735-AJR, 2026 WL 1047688, at *6, 2026 U.S. Dist. LEXIS 61209 (C.D. Cal. Mar. 23, 2026); Miri v. Bondi, No. 26-cv-00698-MEMF-MAR, 2026 WL 622302, at *9, 2026 U.S. Dist. LEXIS 46944 (C.D. Cal. Mar. 5, 2026).

b. Burden of Proof at § 1226(a) Bond Hearings.

8 U.S.C. § 1226(a) "authorizes the federal government to detain [noncitizens] pending the completion of their removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1193 (9th Cir. 2022). Detention is not mandatory; the government may either detain the noncitizen or release them on bond or conditional parole. Id. at 1196 (citing 8 U.S.C. § 1226(a)(1)-(2)). "When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination." Id. (citing 8 C.F.R. § 236.1(c)(8)). "Under § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an IJ at any time before a removal order becomes final." Id. at 1197 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19). If a noncitizen's detention is governed by § 1226(a), that section continues to applies until the order of removal becomes administratively final and any Ninth Circuit review has concluded. See Prieto-Romero v. Clark,

534 F.3d 1053, 1059-60 (9th Cir. 2008) (interpreting 8 U.S.C. § 1231(a)(1)(B)). Section 1226(a) and its implementing regulations "provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." Rodriguez Diaz, 53 F.4th at 1202.

The text of § 1226(a) itself is silent as to which party bears the burden of proof at such a custody redetermination hearing and the quantum of evidence necessary to satisfy that burden. The BIA and DHS have "interpreted § 1226(a) to place '[t]he burden ... on the [noncitizen] to show to the satisfaction of the [IJ] that he or she merits release on bond.'" Al-Sadeai v. ICE, 540 F. Supp. 3d 983, 988 (S.D. Cal. 2021) (quoting In re Guerra, 24 I&N Dec. 37, 40 (BIA 2006)).

The Ninth Circuit case cited by Petitioner, Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), was "from a long line of [Ninth] circuit precedent addressing the process available to detained [noncitizens], specifically, whether and when they are entitled to additional bond hearings and the procedures that should govern them." Rodriguez Diaz, 53 F.4th at 1195-96. As the Ninth Circuit explained:

> We previously applied the canon of constitutional avoidance to interpret other immigration provisions—8 U.S.C. §§ 1225(b), 1226(c), and 1231(a)(6)—as providing a *statutory* right to a bond hearing once detention becomes prolonged. Having implied such a right, [the court in Singh] then concluded that for these hearings [i.e., hearings after prolonged detention] to comply with due process, the government had to bear the burden of proving by clear and convincing evidence that the [noncitizen] poses a flight risk or a danger to the community.

Rodriguez Diaz, 53 F.4th at 1196. In Rodriguez Diaz, the Ninth Circuit considered whether noncitizens detained pursuant to § 1226(a) are entitled to these same protections. Id. at 1193-94. The Ninth Circuit held that they are not, reasoning:

> Key aspects of our cases in this area are no longer good law, and regardless, they do not otherwise govern here. The Supreme Court has now twice overturned our decisions that invoked the canon of constitutional avoidance to interpret other immigration detention provisions as impliedly providing the right to a bond hearing. Singh's holding about the appropriate procedures for those bond hearings—which also arose under different statutory provisions than the one here—was expressly premised on the (now incorrect) assumption that these hearings were statutorily authorized. Singh did not purport to establish a freestanding set of constitutionally mandated procedures that would apply to any detained [noncitizen]. On the contrary, … neither our Court nor the Supreme Court has ever directly addressed the type of constitutional challenge to [noncitizen] detention bond procedures that we consider here—whether under § 1226(a) or otherwise.

Rodriguez Diaz, 53 F.4th at 1196; see generally Jennings v. Rodriguez, 583 U.S. 281, 306 (2018) (finding "nothing in § 1226(a)'s text—which says only that the Attorney General 'may release' the [noncitizen] 'on ... bond'—even remotely supports the imposition" of "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the [noncitizen's] continued detention is necessary"). Applying the Mathews framework in Rodriguez Diaz, the Ninth Circuit found that the existing procedures under § 1226(a) "sufficiently protected Rodriguez Diaz's liberty interest and mitigated the risk of erroneous deprivation." 53 F.4th at 1209.

"Importantly, though, the Ninth Circuit … made clear that it did not

'foreclose all as-applied challenges to § 1226(a)'s procedures' because 'due process is a flexible concept that varies with the particular situation.'" Nola v. DHS, No. 26-cv-02180-MBK, 2026 WL 1330294, at *7, 2026 U.S. Dist. LEXIS 106210 (C.D. Cal. May 13, 2026) (quoting Rodriguez Diaz, 53 F.4th at 1202, 1213). The Supreme Court has likewise left open the possibility of an as-applied due process challenge to bond hearings under § 1226(a). See Jennings, 583 U.S. at 312 ("Because the Court of Appeals erroneously concluded that periodic bond hearings are required under the immigration provisions at issue here, it had no occasion to consider respondents' constitutional arguments on their merits. … [W]e do not reach those arguments. Instead, we remand the case to the Court of Appeals to consider them in the first instance.").

Against this backdrop, numerous district courts in the Ninth Circuit have found it appropriate, as a matter of due process, to place the burden on the government to prove danger and/or flight risk by clear and convincing evidence in certain situations. They typically do so when: (a) "ordering the release of noncitizens who had been illegally detained"; or (b) "where the Government had erroneously denied the petitioner a bond hearing for months." Nola, 2026 WL 1330294, at *7 (collecting cases); see also Bajaj v. Cruz, No. 2:26-cv-01031-CAS-SP, 2026 WL 700543, at *5, 2026 U.S. Dist. LEXIS 54771 (C.D. Cal. Mar. 4, 2026); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1034 (N.D. Cal 2025). "In such circumstances, courts have concluded that 'it is improper to ask the individual to share equally with society the risk of error when the possible injury to the individual ... is so significant' and found it appropriate that the Government bear the burden by 'clear and convincing' evidence." Nola, 2026 WL 1330294, at *7 (citation omitted).

**2. Analysis.**

Petitioner is not entitled to relief on Ground 1 for several reasons. First, he has not convincingly shown that the IJ placed the burden of proof on him rather

than on the government. The IJ's order states, "Regardless of whose burden it is, the Court finds [DHS] has demonstrated, by clear and convincing evidence, that Respondent is a flight risk such that no amount of bond could mitigate or ameliorate the risk." (Answer Ex. B / Dkt. 11-2.) Taken in context, the phrase "regardless of whose burden" is, by itself, insufficient to show that the IJ placed the burden on Petitioner. See Martinez, 124 F.4th at 785 (finding "no … red flags" where "[a]t the outset of its decision, the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that [the petitioner was] a danger to the community," and where the decision noted but was not convinced by the petitioner's history of rehabilitation). Petitioner does not point to any other evidence in the record.

Second, more importantly, Petitioner has not shown that placing the burden on him would have been legal error in this context. This Court's order in Petitioner's prior habeas case merely ordered a hearing pursuant to 8 U.S.C. § 1226(a). Ankit I, Dkt. 13 at 4. As discussed above, the Ninth Circuit has held that, generally, placing the burden of proof on the petitioner in a hearing under § 1226(a) does not violate due process. See Rodriguez Diaz, 53 F.4th at 1203 (holding that the Due Process Clause did not "entitle Rodriguez Diaz to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence"). Petitioner has not cited any other circumstances that might make placing the evidentiary burden on him illegal or unconstitutional. Accordingly, he has not shown that he is entitled to relief on Ground 1.

**B. Petitioner is Not Entitled to Relief on Ground 2.**

Petitioner argues, "Continued detention requires a meaningful determination that incarceration remains necessary." (Pet. at 16.) "[T]he passage of time is relevant because Petitioner's deprivation of liberty continues while the determination supporting that deprivation becomes increasingly removed from his present circumstances." (Id. at 17.) "[T]he continuing deprivation of Petitioner's

physical liberty rest[s] upon constitutionally adequate process establishing that incarceration remains necessary today." (Id. at 18.) Petitioner appears to be arguing that he is entitled to a second bond hearing, as a matter of due process, because approximately four months have passed since the prior bond hearing. (See id. at 17 (applying due process test from Mathews v. Eldridge, 424 U.S. 319 (1976)).)

Petitioner's detention continues to be governed by § 1226(a), which means he may request a new bond hearing before an IJ at any time based on a showing of changed circumstances. See Rodriguez Diaz, 53 F.4th at 1203, 1209-10. In this context, the mere passage of time alone does not demonstrate a due process violation. Accordingly, he has not shown that he is entitled to relief on Ground 2.[5]

## V. CONCLUSION

IT IS THEREFORE ORDERED that the Petition is denied.

DATED: September 10, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

---

[5] Because the Court concludes that Grounds 1 and 2 fail to state a claim for relief, the Court assumes without deciding that those claims are not barred by the abuse-of-writ doctrine or due to Petitioner's failure to exhaust his administrative remedies.